**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-1128

KATHLEEN GARROW,

Plaintiff - Appellant,

versus

ECONOMOS PROPERTIES, INCORPORATED,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News.  Walter D. Kelley, Jr., District Judge.  (4:04-cv-00067-WDK)

Argued:  May 24, 2007                    Decided:  July 11, 2007

Before NIEMEYER and DUNCAN, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Ann Katherine Sullivan, CRENSHAW, WARE & MARTIN, P.L.C., Norfolk, Virginia, for Appellant.  Kevin E. Martingayle, STALLINGS & BISCHOFF, P.C., Virginia Beach, Virginia, for Appellee.  **ON BRIEF:** Melissa Morris Picco, CRENSHAW, WARE & MARTIN, P.L.C., Norfolk, Virginia, for Appellant.  Cara L. Griffith, STALLINGS & BISCHOFF, P.C., Virginia Beach, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal arises from an employment discrimination action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)) et seq. ("Title VII"). Plaintiff-Appellant Kathleen Garrow ("Garrow") alleges that her employer, the Omni Hotel of Newport News ("Omni" or "hotel"), owned by Defendant-Appellee Economos Properties ("Economos"), terminated her on the basis of sex. Finding that Garrow fails to present a prima facie case of discrimination, we affirm.

I.

As always on a motion for summary judgment, we recite the facts in the light most favorable to Garrow, the non-movant. See Nguyen v. CNA Corp., 44 F.3d 234, 237 (4th Cir. 1995). Nicholas Economos ("Nick") and his brother Dennis Economos ("Dennis") are the principal owners of Economos Properties. Garrow was employed by Economos in several positions, beginning as the Sales Manager for the Omni in Newport News, Virginia in 1994. She left the company in 1997 but returned in 1999 as the Director of Sales and Marketing. At that time, Garrow became a member of the hotel's executive team and reported directly to its General Manager. Nick Economos resides in Florida and delegates the day-to-day operations of the hotel to the General Manager. In 2001, Lee Severino

2

("Severino") became General Manager and Garrow reported directly to him.

Severino allegedly made a variety of hostile comments to and about women during Garrow's time under his management. For example, he told Randy Kornegay, a male employee with no housekeeping experience, who was promoted to Executive Housekeeper, that "employees would respect a man before a woman." J.A. 10, 260. Severino also called women "cackling hens," "whining women," and "balls and chains," in a work context and during meetings. J.A. 10, 261, 270-74, 277, 287-88, 291, 553. He called one employee a "tired old bat" and another a "lazy black bitch." J.A. 10. He also commented that only men could obtain business from women. Despite these circumstances, it is undisputed that Garrow performed at a high level during her tenure at Omni, as evidenced by the revenue growth in her department and her promotion to the executive team upon her return to the company.

The sequence of events that culminated in Garrow's termination began when her husband was given the opportunity by his employer to transfer to Florida. Garrow discussed with Nick the possibility of becoming the General Manager of one of the Florida hotels. To facilitate such a transfer, Garrow began training as an "Assistant General Manager" at the Omni in Virginia while continuing to perform her duties as Director of Sales and Marketing at the same time. She was never formally promoted, nor did she receive a raise

3

in pay.  Also during this period, Garrow trained a female employee in the marketing department, Cheryl Johnson, in certain job skills transferable to the Director of Sales and Marketing position.

In 2002 and 2003, Nick Economos became concerned about the hotel's financial performance, especially in light of the increasing conflict in Iraq.  The previous Iraq war in 1991 had caused significant financial problems for the hotel.  Nick had conversations about reducing costs at the hotel with Dennis and Severino, and Severino made several proposals regarding labor costs.  Nick instructed Severino, whose job description included managing payroll and personnel matters, to "do whatever is necessary at your discretion [to get] those numbers . . . in line." J.A. 241.  On February 14, 2003,  Nick directed Severino to take certain personnel actions to cut costs, and a list of the personnel to be affected was created.  This list has since been destroyed. Nick made the decision to terminate Garrow at this time, according to his testimony, because he was aware that she was planning to leave the hotel to follow her husband to Florida.  On February 14, immediately following the conference call with Nick, Severino called Garrow to terminate her.

A month after her termination, Garrow filed a charge with the EEOC.  After completing the administrative process, she sued Economos in June 2004 in the Eastern District of Virginia for violating Title VII.  The district court dismissed her suit for

4

failure to establish a prima facie case of discrimination.  It is her timely appeal that is before us.

                              II.

    We turn now to the question of whether the district court properly granted summary judgment to Economos on Garrow's discrimination claim.  Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986);  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  Summary judgment will be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322. We review a grant of summary judgment de novo. Nguyen, 44 F.3d at 236.

    We evaluate Title VII discrimination cases under a unique framework at the summary judgment stage.  A plaintiff may prove her case in one of two ways: (1) by offering direct evidence of discrimination under the ordinary standards of proof, or (2) under the system of shifting evidentiary burdens established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d

                               5

310, 318 (4th Cir. 2005).  Because Garrow does not proffer direct evidence of discrimination, we utilize the McDonnell Douglas paradigm.

The parameters of the McDonnell Douglas framework vary somewhat depending on the type of discrimination that is alleged, but all plaintiffs must first allege a prima facie case of discrimination.  To do so, a plaintiff must show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) her performance met the employer's legitimate expectations at the time of the alleged adverse action; and (4) the position in question either remained open or "was filled by [a] similarly qualified applicant[] outside the protected class."  Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 285 (4th Cir. 2004).

Here, it is uncontested that Garrow satisfies the first three elements of the prima facie case.  First, she is a woman, and therefore a member of a protected class.  Second, she clearly suffered an adverse employment action when she was terminated from her job at Economos.  Third, Economos does not contest that Garrow was an exemplary performer.  It is the fourth and final prong of the prima facie case, that the position remain open or be filled by an individual outside the protected class, that prevents us from allowing this case to proceed.

It is uncontested that Garrow's position of Director of Sales and Marketing was filled by Cheryl Johnson after Garrow was terminated.[1]  It is correct, as Garrow argues, that Johnson was not officially promoted until after Garrow filed suit against Economos. However, Johnson had been trained to fulfill the responsibilities of the Director of Sales and Marketing position before Garrow left the company.  Johnson also began performing the duties of the Director of Sales and Marketing position before she was officially promoted.  Garrow's position therefore neither remained open nor was filled by a person outside the protected class.  Because Garrow cannot present a prima facie case of discrimination, we need not

---

[1]The district court assumed that Garrow's position was the Assistant General Manager position and based its analysis on this fact.  The Assistant General Manager position was not filled after Garrow left the company.  Even assuming that Garrow was not the Assistant General Manager, as she argues, and was the Director of Sales and Marketing, as we accept above, she still is not able to satisfy the prima facie case.

reach her allegations of pretext.[2]  Therefore, we hold that summary

judgment was properly granted to Economos on this claim.


III.

Because Garrow fails to make a prima facie case of

discrimination, the district court's grant of summary judgment is

AFFIRMED.

---

[2]Out of an apparent abundance of caution, the district court analyzed Garrow's dismissal as occurring as part of a reduction in force ("RIF") at the hotel, and Garrow argues this point on appeal. This is significant because if we are confronted with allegations of discrimination within the context of a reduction in force, we do not apply the McDonnell Douglas framework as articulated in Hill, 354 F.3d at 285.  In the RIF context, our framework for analysis is modified. See Dugan v. Albemarle County School Bd., 293 F.3d 716 (4th Cir. 2002).

We decline, however, to pursue this line of analysis, for two reasons.  First, the focus of Garrow's complaint is on her individual claim.  Although she refers to the treatment of other women by Severino, she appears to do so in the context of alleging that Economos's reasons for terminating her were pretextual.  As noted above, because Garrow fails to set forth a prima facie case, we do not reach the question of pretext.  Further, we find there to be insufficient evidence that Garrow's termination occurred as part of a RIF.  It is clear that Nick and Severino were both aware that Garrow's husband had accepted a job in Florida, and Garrow herself had asked about the possibility of transferring to another hotel. There is no evidence that Garrow's termination was connected to any of the other personnel actions taken by Economos, other than the fact that they shared the common goal of reducing costs at the hotel.  The fact that Garrow was named on a "list" that also included the demotions of other employees is not sufficient to allege a RIF.

8